## EVERTSON and others *against* TAPPEN.

An account taken before a master, pursuant to an order of the Court, on petition of an executrix, when no suit was pending, is not binding on infant heirs, who may, on coming of age, file their bill for an account: But where the father and guardian of the infants attends in their behalf, before the master, in taking the account, it will not be opened, further than may be necessary to correct such errors as they may point out.

After the death of a testator, who had, in his life time, purchased land, and given a bond and mortgage for the purchase money, his widow, who was sole executrix, and empowered to sell the estate, to pay debts, &c., conveyed the equity of redemption to *S. M.* who gave his bond and mortgage for the same sum, which were accepted by the mortgagee, in lieu of the testator's bond and mortgage, which were given up and cancelled: *Held*, that the widow, in her account, as executrix, with the heirs, was not to be allowed the estimated value of her dower in the land, as the heirs derived no benefit whatever from the sale.

Where a widow and executrix was empowered to sell the real estate of the testator, to pay debts, and to release her dower on such sale, and retain the value thereof out of the proceeds: *Held*, that the dower was to be computed, according to the value of the property at the time of her husband's death.

An executrix suffered land, of which the testator died seised, subject to a mortgage, to be sold under the mortgage, and became the purchaser thereof, in her own right, and sold it: *Held*, that she was liable to account for the proceeds of the sale to the heirs; but that, as widow of the testator, she was entitled to her dower out of the proceeds, subject to her rateable contribution towards the extinguishment of the amount of the mortgage debt.

Where a testator devised to his wife the use and possession of all his estate, real and personal, during her natural life, or widowhood, and made her executrix: *Held*, that she was accountable to the heirs, for the use only of such part of the real estate, as the testator had acquired, after the date of the will; and that she was to be allowed, in her account, for so much of the rents and profits of such after acquired lands, as were applied by her towards the payment of the

1821.

EVERTSON
v.
TAPPEN.

debts of the testator, after the personal estate had been applied for that purpose, and exhausted.

The estate of *C.* was directed to be sold, and the proceeds to be paid to *T.* in trust to pay incumbrances and expenses; and the residue in trust for the creditors of *C.*, and the *surplus* in trust for the wife of *T.*   *T.* purchased in the whole estate at one bid, and by assuming to pay their debts, prevented the creditors of *C.* from bidding, and all competition at the sale, so that the real value of the estate, at auction, could not be ascertained, nor whether any, or what *surplus*, remained in trust for his wife, and *T.* continued to hold the estate exclusively as his own, until his death : *Held*, that the wife was entitled to consider the land, or so much thereof as remained unsold to pay the debts of *C.*, as her own, discharged from any claim of the husband or his heirs.

Compound interest is not allowed in favour of a trustee, though it is, sometimes, permitted against him, when he refuses to disclose the profits he has made out of the trust property.

Where the mother, as executrix, charges her children, being infant heirs, with board, clothing, &c. they are entitled to be allowed in account for the value of their labour and services.

*March* 29th, and *August* 18th.

PETER TAPPEN, grandfather of the plaintiffs, *John R. Evertson* and *Cornelia Evertson*, infants, by his last will, dated *February* 12th, 1776, devised the use and possession of all his estate, real and personal, to his wife, the defendant, during life, or widowhood ; and after his death, to his three children, equally, in fee :   He appointed the defendant *Elizabeth T.*, and his brother-in-law, *George Clinton*, his executors, whom he empowered to sell and dispose of all his real estate in fee, and apply the moneys for the uses mentioned in his will.   The testator died in *September*, 1792.

At the date of the will, the testator had three children, *Cornelia*, the mother of the plaintiffs, *Catharine*, who married *Robert H. Livingston*, deceased, and *Peter M.*, who died under age, and without issue.   After making his will, the testator had six other children, who are still living. *Cornelia*, the mother of the plaintiffs, died in 1808 ; and the plaintiffs, as her only representatives, were entitled to her share of her father's estate.   In 1792, the defendant proved

the will, sued out letters testamentary, and took possession of all the property of the testator, with the books, &c.

The bill alleged, that no inventory of the property was filed by the defendant. That the defendant, in *March*, 1793, represented to the legislature, among other things, that the debts of the testator exceeded the value of the real and personal estate, owned by him at the time of making his will, and that contracts had been made by the testator, for the sale of parts of his real estate subsequently acquired, and for which conveyances had not been executed ; and an act was passed, authorising the executors to perform those contracts, and to sell all or any of the real estate of the testator, whether acquired before or after making the will ; and after paying his debts out of the proceeds, to put out the residue at interest, for the benefit of his heirs and devisees. That the testator left a large personal estate, more than sufficient to pay all his debts, and which the defendant has taken into her possession.

That in 1795, the defendant applied to the plaintiffs' mother and her sister, to release to the younger children of the testator, born after the will, a portion of his estate, promising, in consideration thereof, to divide all her own property, of every kind, between them and the younger children. That the said *Cornelia* and *Catharine*, and their husbands, accordingly, executed an agreement, dated *July* 20th, 1795, by which they released to the younger children, by name, six eighths of all the real estate of which the testator was seised at the date of his will ; but that the defendant, so far from allowing the said *Cornelia*, or her children, the plaintiffs, to participate in the separate property of the defendant, has attempted, in various ways, to shift the estate of the testator, so as to make it appear to be her separate property.

That the defendant proposed to the said *Cornelia* and *Catharine*, and their husbands, and a younger daughter, who was of age, and her husband, to allow her to retain

1821.

EVERTSON
v.
TAPPEN.

possession of all the estate of the testator, until the youngest of his children should come of age, without division, promising to manage it without loss or sacrifice, and to settle and divide it among all the children or their representatives, when the youngest child came of age, which would be in 1815; and they, therefore, on the 17th of *October*, 1799, executed a writing prepared by the defendant, authorising her to sell the store of the testator, and a lot of ground at the landing, and such other parts of the real estate, over and above what was necessary to pay the debts, as the executors should judge beneficial; and that no dividend should be made of the estate, in ten years from that date, if the defendant should live so long unmarried; and, in all cases, where sales had been, or should be made, and the defendant should release her dower, she might retain the value of it, out of the proceeds. That the said agreement was not intended to extinguish or compensate for any right of dower of the defendant, in lands previously sold; and that she did not claim dower in the store or land, before that time sold to *John Mott.* That the defendant, since the youngest child of the testator has come of age, has refused, and opposed the settlement and division of the estate.

That by an act of the legislature, passed *March* 22d, 1788, the commissioners of forfeitures for the *Middle District*, were authorised, on giving six weeks public notice, to sell all the real estate in *Poughkeepsie*, forfeited by the attainder of *Bartholomew Crannell*, and to pay the moneys arising from the sale, deducting ten pounds for commissions, to *Gilbert Livingston*, and *Peter Tappen*, the testator, (who had married daughters of *B. C.*) in trust, to be applied by them in payment of mortgages and incumbrances, and to reimburse themselves for advances, and the residue and the rents received by them, in trust to pay the creditors of *B. C.*, and if any surplus remained, then in trust for *Catharine L.* and *Elizabeth T.*, the wives of the said *G. L.* and *P. T.* in equal shares. That in 1788, the commission-

ers of forfeitures of the *Middle District*, sold all the real estate of *B. C.* in *P.*, forfeited by his attainder, as the same was pointed out by the said *G. L.* and *P. T.*, with the knowledge of their wives, and they the said *G. L.* and *P. T.* became the purchasers, and received the conveyances and covenanted for the payment of the purchase money according to the directions of the act. That the said *G. L.* and *P. T.*, and their wives, or some of them, as agents of *B. C.*, procured a valuation of the said estate, as having belonged to *B. C.* in fee; and for which they received a compensation from the *British* government. That *G. L.* and *P. T.* took possession of the estate so purchased, and occupied the same, as owners thereof in fee, and made partition thereof, and their wives joined in the deeds of confirmation and partition; and the said *G. L.* and *P. T.* afterwards possessed their respective shares, in severalty, according to the partition. That after the death of *P. T.*, the defendant took possession of the premises, under her authority derived from the will, &c. and as natural guardian to her younger children, always acknowledging the title of the testator, until the youngest child came of age, when she, for the first time, openly pretended, that *B. C.* never had any title to the premises, but that the same belonged to *T.*, his wife, one of the daughters of *Peter Van Kleeck*; and that she had had conveyances for the same from her heirs.

That the testator was seised, at his death, of a moiety of lot No. 1. of the subdivision of great lot No. 2. in the *Hardenbergh* patent, containing 2,956 acres and an half, and the same being subject to a mortgage to the State, from the person from whom the title was derived, it was agreed between the defendant, and *G. L.* and *Daniel Monk*, who owned the other moiety, to permit the land to be sold under the mortgage, and to buy it in, in order to confirm the title. That in 1794, the land was sold under the mortgage, and the defendant, and the said *G. L.* and *D. M.*, became the purchasers, for about the amount of the mort-

1821.

EVERTSON
v.
TAPPEN.

gage debt, and one moiety of the land was conveyed to the defendant, and the other moiety to *G. L.* and *D. M.* The plaintiffs alleged, that the defendant, by such purchase, became a trustee for the heirs of the testator, and could not, in equity, hold the land in her own right; but that the defendant has since set up a claim in her own right, and in 1806, sold the land to *P.* and *H. Ruggles,* for 5,000 dollars.

That the testator, and *G. L.*, and *Israel Smith,* owned the *Union* store and landing, in *Poughkeepsie,* with two or more sloops; *I. S.* died in 1791; and the testator, in 1792, purchased of the executors of *I. S.* his third of the said property for 2,500 dollars, for which he gave his bond, and a mortgage executed by himself, and the defendant, which remained unpaid at his death. That the defendant, after the death of the testator, agreed with *John Mott,* to give up the said purchase to him, if the executors of *I. S.* would accept him in the place of the defendant, and release the estate of the testator; and the executors of *I. S.,* having acceded to the proposal, the defendant, accordingly, conveyed the third part of the premises to *J. M.,* and the executors of *I. S.* gave up the bond of the testator. That the defendant claims interest on the one *third* of the sum of 2,500 dollars, as her dower, in the premises, from the time of the sale to *Mott;* but the bill charged, that she was not entitled to dower therein. That the defendant took possession of the other third of the premises, belonging to the estate of the testator, and held the same until 1799, when she sold the same to *George B. Evertson,* for 5,000 dollars, having, in the mean time, made great profits out of the stores, sloops, &c., for which she refused to account, claiming the same as her own.

That the testator was interested, in his own right, with *George Clinton* and others, in several tracts of land in the *Kayaderosseras* patent, parcels of which were sold by the testator, and bonds and mortgages taken from the purcha-

sers, and for other parts, contracts of sale were made. That the defendant has possessed herself of the bonds, mortgages, and contracts, and received moneys thereon, and for other parts of the land sold by her, for all which she refuses to account. That the testator died seised of five acres of land in *P.* on which there were several houses, on which the defendant has received the rents and profits; and has charged large sums for repairs and improvements, giving herself credit for the full third of the rents, with compound interest, for her dower, without making any deduction for expenditures.

That the defendant has possessed herself of a wood lot of twenty-one acres, in *Clinton*, of which the testator died seised, and has taken, and suffered others to take, large quantities of wood from the lot, for which she refuses to account.

That the testator died seised of other lands, in the counties of *Dutchess, Ulster, Montgomery, Clinton,* and elsewhere, the particulars of which are unknown to the plaintiffs, but of which the defendant has taken possession, with the title deeds, &c., and part of which she has sold, but refuses to account for the proceeds.

That in *February,* 1816, the defendant presented a petition to this Court, to have her accounts, in relation to the estate of the testator, referred to a master, and to have *George B. Evertson,* appointed guardian of the plaintiffs, to attend the hearing before the master. That on the 23d of *February,* 1816, this Court made an order, referring the accounts of the defendant to Mr. *Swift,* a master, and appointed *G. B. Evertson* guardian of the plaintiffs. That, at that time, there was no cause pending in this Court. That *G. B. E.,* on notice, attended before the master, several times, in the spring of 1816, and offered to go on with the accounting, if the books, accounts, &c. were placed in a situation in which he could examine them; but the defendant, refusing so to submit the books, &c. and being advised,

that the proceedings were extra-judicial, and not binding on the plaintiffs, refused to attend further on the master, and produced no proofs. That *G. B. E.* did not, on the 10th of *February*, 1817, close his proof, or submit to the reference to the master. That on the 19th of *March*, 1816, the first day of the hearing before the master, the other children of the testator admitted, for the purpose of such reference, that the accounts of the defendant were correct, and that the estate of the testator was indebted to the defendant, in the sum of 25,400 dollars, on the 22d of *February*, 1813, without interest; and the six younger children confessed balances against them for board, to the amount of 8,000 dollars and upwards. The plaintiffs averred, that no such sum was due to the defendant; that her separate property, if any, was inconsiderable, and unproductive; and that she was in no business, and wholly depended on the estate of the testator for the support of herself and family. That the admissions above stated, were made without any examination. That on the 8th of *January*, 1818, the master made a report, certifying the sum of 4,341 dollars and 95 cents, to be due from the plaintiffs to the defendant, and chargeable on the one *eighth* of the estate belonging to the plaintiffs, and as being the amount expended by her, on account of the *eighth* part of the estate, over and above what she had received. The plaintiffs denied that any thing was due from them to the defendant; and alleged, that she was largely indebted to them. The plaintiffs stated various claims of the defendant before the master, and allowed by him, which they alleged to be unfounded and improper, and that the master had allowed *annual rests* in the account, thereby charging the plaintiffs a large sum for *compound interest.*

That the defendant had filed a bill in this Court, praying a sale of the interest of the plaintiffs, in the estate of the testator, for the purpose of paying her the amount so reported to be due to her from the plaintiffs; and had obtained from the other children of the testator, a written

acknowledgment of the balance against them, and consenting to a sale of their interests. *Prayer*, that the defendant be directed to place her books of accounts, containing the original entries, &c., with a master, with the vouchers, so that the plaintiffs may examine the same ; and that she produce and deposit the deeds and evidences in her power or possession, relative to the real estate of *P. T.*, and that she be decreed to come to an account with the plaintiffs, and to pay what may appear to be due to them, &c. and that the plaintiffs be let in to their share of the real estate ; and for general relief.

The defendant, in her answer, admitted most of the facts stated in the bill. She admitted, that she took possession of all the property of the testator, but denied that she had concealed the books and accounts, &c., or had refused to account, and averred that she had fully accounted before the master, pursuant to an order of the Court, before the plaintiffs filed their bill. She denied that she refused to allow *G. B. E.*, as guardian of the plaintiffs, to examine the accounts, &c., but that she offered to permit him to examine them, at her house, in the presence of any witness he might select, but not to take the books and accounts into his own possession. She admitted that the testator died possessed of a large personal estate, consisting in vessels, stock in trade, farming utensils, debts, &c. which she took into her possession. That she made out an inventory of the personal estate, according to a schedule annexed to her answer, to which she also annexed a particular account of the amount of debts collected, proceeds of personal property sold, rents and profits of real estate received, &c. But she admitted, that she did not file the inventory, because she deemed it unnecessary, as she was entitled, by the will, to the use of the personal property during her life ; and she averred, that she had given credit for the whole of it in her account, except the household furni

1821.

EVERTSON
v.
TAPPEN.

ture ; and such parts of the furniture as were delivered to her daughters, were charged to them. She admitted the release of the 20th of *July*, 1795, stated by the plaintiffs, and alleged that it was made according to the known intentions of the testator, expressed a short time before his death, and which the parties believed to be fair and right. She denied that as a consideration for that release, she promised to divide her estate under the will, or give up her right of dower, or any estate in her own right ; though she said at the time, that unless such release was executed, she should, by her will, so dispose of her own separate property, as to make all her children equal. That at the time of accounting before the master, she delivered to *G. B. E.* a copy of the release, and of all the papers, documents and accounts relating to the estate of *P. T.* which were requested. She admitted that she has never permitted the plaintiffs, or their mother, to participate in her own separate property, as a matter of right, and denied that her separate property was liable to any such demand from them, or her other children ; but that she has charged to them in account, the various advances made to them. She denied that she had attempted to appropriate the property of the testator, in any such manner as suggested by the plaintiffs, or to make any part of it her own ; and she alleged, that she had a large and just account against the estate of *P. T.* for advances made out of her own separate property, as would appear from the account annexed to her answer, which was a true statement of all charges against the estate, and of all credits to which it was entitled ; and that she might receive the balance due to her, she had filed her bill in this Court, that so much of the real estate might be sold, as was sufficient for that purpose.

The defendant admitted, that *B. Crannel*, at the time of his attainder, as stated in the bill, was possessed of a considerable estate in *Poughkeepsie*, which she particularly set forth, of which he was seised in his own right, and part in

right of his wife, the mother of the defendant; and she insisted, that the interest of the wife of *B. C.* in the lots specified, was not subject to forfeiture on his conviction, and did not become vested in the State. She admitted, that the estate of *B. C.* was sold by the commissioners of forfeiture, to *G. L.* and *P. T.*, as stated in the bill, by deed dated *May* 30, 1788; but she did not know, nor did she believe, that *G. L.* and *P. T.* pointed out to the commissioners the lands so conveyed, as the estate of *B. C.* That the defendant and her sister *Catharine*, the wife of *G. L.*, had no agency or control over the purchase, so made by their husbands; and she insisted, that if any lands included in that deed, did not belong to *B. C.*, at the time of his attainder, and to which the defendant and her sister *C. L.* have acquired a title by descent or otherwise, they cannot justly be precluded from asserting their right. And the defendant stated and deduced the title, and insisted that she was seised, by descent and purchase, of two fifths, her sister *Catharine L.*, of one fifth, and her husband *Gilbert L.*, of one fifth, of all the estate of *Trientie*, the wife of *B. Crannel.* She stated, that until the plaintiffs commenced proceedings in partition, in 1813, she was not called upon to designate what property she held as executrix, and what in her own right; but after those proceedings had commenced, it became necessary for her to resist any claim, and to set up her own right. The defendant admitted the statement in the bill as to the *Union store, and landing, &c.* and insisted, that she was equitably entitled to her dower, in the one third sold to *Mott.* She denied that, at the time of executing the agreement of *October* 17, 1799, stated in the bill, she agreed to relinquish her dower in any of the lands of the testator, sold or unsold; or that she ever consented to a division of the estate, at any time, before her account was settled, and a sufficiency of the estate sold, to pay the balance due to her.

The defendant then set forth the particulars as to the rest of the estate of the testator, but which it is unnecessary to state here. She admitted that the order of reference, &c., of *February* 23, 1816, was on her petition, and that no suit was then pending. That *George B. Evertson*, the father and guardian of the plaintiffs, attended in their behalf before the master, on the 17th of *March*, 1816, pursuant to notice, and continued to attend, on thirteen different days afterwards, and carefully investigated the accounts and vouchers exhibited by the defendant; and in the forenoon of the last day, he was told by the master, that the examination would be closed on that day, unless he had proofs to exhibit, but that he left the master, without requesting an adjournment, or expressing a determination to return; and did not again appear or exhibit any proofs. The defendant then set forth the particulars of the account before the master, &c., and insisted, that if there were any objections to the proceedings, or to the report of the master, they ought to have been made by way of exception.

Much evidence was taken on both sides, and the cause was brought to a hearing on the pleadings and proofs, (which were very voluminous,) on the 29th of *March*, 1821.

*T. I. Oakley*, for the plaintiffs, contended, that the plaintiffs were not in any manner concluded by the accounting before the master, there being, at that time, no suit pending in which they were parties.  No decree can be had against infants, unless they have had a day in court, after coming of age, to show cause against it.  (3 *Johns. Ch. Rep.* 368. 2 *P. Wm.* 387.)

That if the account taken before Mr. *Swift*, be not irregular and void; yet it ought to be opened, as it has been stated on erroneous principles, and great injustice has been done to the plaintiffs.

He then proceeded to state particularly how the new

account ought to be stated, as to all the different charges and credits.

*P. Ruggles*, contra, insisted, that the plaintiffs, having regularly attended, by their guardian, to the taking of the account before the master, had waived all objection to the formality of the proceeding; that they ought to be bound by the account, or to have made their objections to the master's report; but if the account should be opened, the examination ought to be confined to the particulars specified, and not extended to the whole account; and that all the costs ought to be paid by the plaintiffs.

That by the will of the testator, which gave the defendant " the use and possession of all his estate, real and personal, during her natural life," she was exempted from all liability to account to his heirs or devisees, for any personal property, owned or possessed by him at his death, whatever disposition she may have made of it. (6 *Cruise's Dig.* tit. *Devise, ch.* 34. s. 39. 1 *P. Wm.* 573. 575. 421. 424. 3 *Atk.* 175.)

That the agreement of the 17th of *October*, expressly provided that the defendant should retain her *dower* in the lands sold : and she was entitled to her dower in one third part of the store and landing sold to *Mott*. If land abide beneficially in the husband, but for a single moment, the wife is entitled to dower. (2 *Bl. Com.* 132. 1 *Cruise's Dig.* 141.).

That the pretended agreement of the 20th of *July*, is denied by the answer, and is not supported by any proof, except the testimony of *G. B. E.* the father and guardian of the plaintiffs, whose evidence was inadmissable. Besides, as a parol agreement, it was clearly void under the statute of frauds. (1 *Johns. Ch. Rep.* 339. 2 *Johns. Ch. Rep.* 554. and cases there cited.)

That by the act of the legislature of 1783, *Gilbert Livingston* and *P. T.*, the testator, were made *trustees* of the whole

of *B. Crannel's* property in *Dutchess* county, which had been forfeited by the attainder ; and for the *surplus* beyond what was necessary to pay the debts and expenses, they were trustees for the defendant and her sister *Catharine L.* That being trustees, they could not purchase for their own benefit. (1 *Mad. Ch.* 90, 91, 92. 377, 378. 1 *Johns. Ch. Rep.* 28. 36. 394. 2 *Johns. Ch. Rep.* 104. 257.) And the defendant, as *cestui que trust*, is now the equitable owner of all that part of the land in her possession. Where an estate is given to the husband, for the use of the wife, he is considered as a trustee for her, and technical words are not necessary. (3 *Atk.* 399. *Bunb. Rep.* 187. 2 *P. Wm.* 316.)

It is the duty of a trustee not to sell, until all due information is acquired by him for the benefit of the *cestui que trust.* (2 *Johns. Ch. Rep.* 110.) No lapse of time bars a direct trust. (3 *Johns. Ch. Rep.* 190. 216. 4 *Johns. Ch. Rep.* 136.)

That if the defendant was not entitled, as *cestui que trust*, to the lands in her possession, and which were included in the deed of the commissioners of forfeitures ; she then claimed by descent from her mother, the wife of *B. C.*, and by purchase from her heirs, of several lots, which never vested in *B. C.*, and could not, therefore, be forfeited.

That the purchase of the lot in the *Hardenbergh* patent, was made by the defendant in her own right, and not as executrix or trustee, for the heirs of the testator. She could not have made the purchase for the heirs, without selling land to raise money for the purpose. The mortgage was not a debt due from the estate. If the bargain had proved disadvantageous, the heirs would have been under no obligation to take the lands. The defendant had a right to use the personal property of the testator as her own, if she paid the debts out of her own money. (3 *Johns. Ch. Rep.* 38. 252. 3!8. 1 *Saund.* 307. 1 *Madd. Ch.* 497. *Toller's L. of Ex.* 136.)

THE CHANCELLOR. The account before the master was taken under an order of the 23d of *February*, 1816, made upon the petition of the defendant. There was no suit then pending, and the order was granted for her greater security and indemnity as executrix; it was not intended to be, and could not be, binding upon the infant plaintiffs, so as to exclude them, on coming of age, from calling her to account. But though it was an *ex parte* order, yet as the father of the infants attended before the master, as their guardian, during the whole protracted progress of the taking of the account, it does not seem to be necessary to open the account any further, than to correct such errors as have now been pointed out, on the part of the plaintiffs. I shall accordingly notice such objections as have been well taken, and state the principles upon which the account is to be restated.

1. In the first place, the defendant is not entitled to dower in the undivided third part of the *Union* store and landing, which was purchased by her husband, *Peter Tappen*, of the executors of *Israel Smith*, deceased. This purchase was made by the husband in 1791, for 2,500 dollars, and he never paid any part of the consideration money ; and on the 24th of *April*, 1793, the defendant and *George Clinton*, as executors of *Peter Tappen*, sold that right to *John Mott*, for the same sum, and his bond and mortgage to the executors of *Smith* was taken and received as a substitute for the debt which *Tappen* owed them on the original purchase. Whether the defendant has any subsisting right of dower against that property, in whose hands soever it may now be, is not the question before me, though I apprehend, that her deed as executrix, without any mention or reservation of that dower, would be a bar to such a claim. The only point now is, whether she has any claim in equity against the plaintiffs, for the estimated value of such a right of dower, supposing it to have existed before the deed to *Mott*; and there does not appear to me to be any colour for such

1821.

EVERTSON
v.
TAPPEN.

Where on the petition of an executrix, when no suit was pending, an order was made for taking an account before a master, the report of the master will not be binding on infant heirs, who may, on coming of age, file their bill for an account; but if the father and guardian of the infants has attended, in their behalf, before the master, the account will not be opened farther than may be necessary to correct such errors as they may point out.

Where the widow and executrix was empowered to sell real estate, and she released land charged with a mortgage, to satisfy the mortgage debt: Held, that the widow was not entitled to be allowed her dower, as the heir derived no benefit from the sale.

claim. The heirs of *Tappen* received no benefit whatever from that sale. The entire proceeds of it were applied to extinguish the debt due from *Tappen ;* and if the plaintiffs were to be charged with any portion of that dower, it would be a charge upon them without any equivalent or consideration. Nothing could be more unreasonable and unjust.

The agreement of the 17th of *October*, 1799, signed by the parent of the plaintiffs, was never intended to apply to such a case, but to cases where the proceeds of the sale belonged to the heirs as beneficial property, capable of being applied to their maintenance and education. They never meant to be charged with an equitable dower in the proceeds of any sale, when their ancestor owed the whole original consideration for the land, and the sale was made purposely to extinguish that debt, and left the purchase without any use or benefit to the heirs.

But the defendant is entitled to dower in all the other lands and real estate, whereof her husband died seised in his own right, or in the proceeds thereof, if sold. I say, *in his own right*, for, as I shall show hereafter, he did not die seised in his own right of the real estate acquired by purchase from the commissioners of forfeitures, under the act of the 22d of *March*, 1788. She is, therefore, entitled to dower in the proceeds of the sale of another third part of the *Union* store and landing, to *G. B. Evertson*, to be computed according to the rule prescribed in the agreement above referred to, of the 17th of *October*, 1799. The claim upon those proceeds must be confined to the sale of the real estate, and not extended to the sale of the vessels, and other personal property, (if any,) belonging to this store and landing, and which were sold together with the real estate, and for one aggregate price. And the value of the dower is to be computed, according to the value of the property at the death of the husband, and not accord-

ing to its increased value afterwards, by reason of beneficial improvements made thereon. The defendant being executrix, and having the whole property in her possession, it was her own fault, and not that of the heirs, that the assignment of dower, if she wished it, was not made presently after her husband's death. She ought not to profit by such delay of her own, at the expense of the infant heirs.

The defendant being chargeable, as I shall presently show, with the proceeds of the land in the *Hardenbergh* patent, she is likewise entitled to dower in these proceeds, under the agreement already mentioned. But the dower in this case must be taken, subject to an equitable contribution, towards the extinguishment of the mortgage upon that land to the state treasurer, existing when her husband became the purchaser of an undivided moiety of that lot. To ascertain the amount of her contribution, as dowress, we must, according to the doctrine or rule in the case of *Swaine* v. *Perine*,\* recently decided, take one third of a moiety of the principal and interest due on that mortgage, when paid, and charge her with the value of an annuity, payable yearly, for her life, of the interest upon. the one third of that moiety, and that value to be computed upon the same principle, that the value of her dower, in the money arising from sales of the real estate, is to be computed.

2. The defendant is not accountable for the use of the personal estate left by her husband at his death, nor for the use of the real estate he owned, at the date of his will, as the use of all this was given to her by the will, nor for the use of the real estate purchased by her husband, as the confiscated property of *Bartholomew Crannel*. But she is to be held accountable for the use of the residue of the real estate, and for the proceeds of sales of the residue of the real estate, and she is to be credited for the appropriation

1821.

EVERTSON
v.
TAPPEN.

An executrix suffered land, of which the testator died seised subject to a mortgage, to be sold under the mortgage, and became the purchaser, and sold it, as her property: Held, that she was liable to account to the heirs, for the proceeds; but she, as the widow, was entitled to her dower, subject to a rateable contribution towards the extinguishment of the mortgage debt.

\**Ante, p.* 482.

Devise to the wife, who was executrix, of the use and possession of all the estate, real and personal, of the testator, during her natural life: Held, that she was not accountable to the heirs for the use of the personal property, nor for the rents and profits of

1821.

EVERTSON
v
TAPPEN.

*the real estate of which the testator was seised, at the date of his will, but only for the use of his after acquired real estate; and that she was to be allowed so much of the rents and profits, as were applied by her to the payment of debts, after the personal estate had been applied for that purpose, and exhausted.*

of the rents and proceeds of that residue, towards the payment of debts remaining due, after the personal estate had been duly applied and exhausted. And, in order to show such due appropriation, she must of necessity account for the amount and disposition of the personal estate. She is likewise to be credited for all reasonable expenditures in the reparation and improvement of the residue of the real estate as above mentioned.

3. The defendant is to be charged with the proceeds of the sale of the land in the *Hardenbergh* patent to *P.* and *H. Ruggles.* She purchased in this land at the sale under the mortgage, in order to deliver her husband's interest in that estate, which he had left at his death, from that incumbrance. Her husband, at his death, was seised of an equity of redemption in an undivided moiety of that lot; and she was his executrix with large powers as a trustee, and was the natural guardian of his infant children.

*An executor or trustee cannot buy in land of the testator, on a sale under an incumbrance, for his own benefit.*

It is impossible to permit such a trustee to buy in, under that incumbrance, for her own benefit. The principle of equity, on this point, is too well settled to be questioned; and the proof in the case is, that she bought, in her representative character, as executrix. She paid the purchase money, or what is the same thing in effect, she redeemed the mortgage, with the assets belonging to the estate. The evidence of this consists in the declarations which she made to *George B. Evertson,* and who appears to be a competent witness, and on the settlement which took place between her and Governor *Clinton,* her co-executor, and from whom she, in the first instance, borrowed the money to make the purchase. She signed the account in which that loan is charged to her *as executrix.*

*The estate of C. was directed to be sold, and the proceeds paid to T., in trust, to pay incumbrances and expenses, and the residue*

4. The defendant is not accountable, because she is entitled, in her own right, to all the real estate, not owned by her husband before that time, and purchased by him in conjunction with *Gilbert Livingston,* in 1788, or the forfeited estate of *B. Crannel.* The act of the 22d of *March,*

1788, entitled, "An act directing the settlement of public accounts, and for other purposes therein mentioned," authorised and directed the sale of the confiscated estate of *Bartholomew Crannel,* in the town of *Poughkeepsie,* and the payment of the proceeds of the sale to *Gilbert Livingston* and *Peter Tappen,* in trust, to discharge incumbrances on the estate, and to reimburse themselves for expenses in buildings and repairs, and to hold the residue in trust, to pay the creditors of *Crannel ;* and the overplus of those proceeds, if any, to hold in trust for the benefit of their wives *Catharine Livingston* and *Elizabeth Tappen,* in equal shares. It is in proof, that *Livingston* and *Tappen* purchased in, themselves, the whole estate, so sold, at one bid, and prevented the creditors of *Crannel* from bidding, by assuming beforehand to pay all the debts; and that they stifled all competition at the sale, so that the real value of that estate, at auction, could not be ascertained, nor whether any surplus, or what amount, would have remained in trust for their wives, if the sale had been left to have been made under the usual competition. It is impossible to know what amount of surplus the wives would have been entitled to ; and I think the husbands cannot be permitted to derive any benefit by their interference, and the uncertainty which they produced, to the prejudice of the *cestui que trusts.* They elected, afterwards, to hold the estate so purchased in, as entirely and exclusively their own, and have destroyed all means of ascertaining the residuary interest of their wives. They have so confounded and mixed up that interest with their own, that a discrimination cannot be made ; and upon just principles of equity, the wives are entitled to consider the land as theirs, discharged from the claims of the husbands.

It might have been deemed proper, that the amount of the debts so assumed by her husband, should have been charged to the defendant, for there never could have been any surplus

to pay creditors of C., and the surplus in trust for the wife of T., and T. purchased in the whole estate at one bid, and prevented the creditors of C. from bidding, by assuming to pay their debts, and stifled all competition at the sale, so that the real value of the estate at the auction, could not be ascertained, nor whether any surplus remained in trust for the wife; and T. continued to hold the estate exclusively as his own, until his death : Held, that the wife, who was executrix of T., was entitled to consider the land, or so much of it as remained unsold by T. for the payment of the debts of C., as her own, discharged from any claim of the husband or his heirs.

without the previous payment of those debts. But it appears, that *Livingston* and *Tappen* sold parts of that real estate so purchased in, to near 3,800 dollars, to discharge the debts of *Crannel*; and the remainder of that real estate, remaining unsold at her husband's death, may well be considered as the proper *residuum* which was held in trust for the defendant.

The wood lot, of which so much was said by the witnesses, was included in the sale and deed given by the commissioners of forfeitures under the act, and purchased in by *Livingston* and *Tappen*, and was part of the trust property.

The defendant does not appear to me to be precluded from setting up her title to this property, as *cestui que trust*, under the act of the legislature, by the manner in which she has treated the property, since her husband's death. She was in possession of it, and not anticipating any controversy between her and her children, she may not have deemed it material to assert that title affirmatively. But when it does become material, she is not precluded or barred from asserting her title, either by the lapse of time, or by her silence, so long as she has not devested herself of her title by any legal act or deed.

The decision on this point renders it unnecessary to examine into the validity of the claim set up by the defendant to a part of the estate held under the purchase from the commissioners of forfeitures, as being derived from her mother, the wife of *Crannel*. I have no difficulty, however, in saying, that the claim is entirely destitue of foundation. *Crannel* acted as owner, for twenty years and upwards, before he left the state; and from that fact, and the removal and dispersion of the papers, during the revolutionary war, there is ground to presume a deed to him, and that the same has been lost or destroyed. That same property was confiscated and sold as his property, and treated as such by

*Livingston* and *Tappen*, with the knowledge and acquiescence of the defendant and her sister, Mrs. *Livingston*, down to the death of *Peter Tappen*, in 1792. This property was appraised, after the revolutionary war, as the sole and absolute property of *Crannel*, when he left this state, and it was so designated and pointed out as his property, by *Livingston* and *Tappen*; and *Crannel*, in the life time of his wife, received compensation from the *British* government, on the foot of that appraisement. It is too late now for the defendant, as one of the heirs of *Crannel*, and as widow of *Tappen*, to set up a title to that property, as heir to her mother. And if this claim had any force or colour, yet the right of *Trientie*, the wife of *Crannel*, was clearly barred by the statute of limitations of the 28th of *March*, 1797, which barred all claims against forfeited estates, not asserted in five years; and *Trientie*, when that act was passed, was alive and a widow.

In reviewing the accounts, all charges and disbursements by the defendant, for reparation or improvement of the property so purchased, as the forfeited estate of *Crannel*, are of course to be disallowed; and she, also, is not to be charged with the rents and profits received by her from that land.

5. The annual rests, and the consequent allowance of compound interest to the defendant, must be omitted. This mode of computation is sometimes resorted to, in order to meet the profits, which the trustee may have made out of the trust property, and will not disclose; but it certainly cannot be allowed in favour of a trustee.

*Compound interest is not allowed in favour of a trustee.*

6. Allowance must likewise be made in favour of the plaintiffs, for what shall appear to the master to have been the value of the labour and services of the mother of the plaintiffs, while she lived in the family with the defendant; and this charge will form a reasonable set-off, as far it

*An executrix who charges her children, as infant heirs, with board, &c. must allow them for the value of their labour and services.*

goes, to the charge for board and clothing of the plaintiffs' mother.

7. The defendant must be directed to deposit with the master, her books of accounts, documents, and original entries, relating to the matters in controversy, for the inspection of the plaintiffs, under the master's direction, and according to his discretion as to the time, mode and extent of the inspection, and the nature and kind of accounts, documents, entries and vouchers, to be so deposited.

8. In all other respects, the account already passed upon, and allowed by the master, is to be taken as correct, unless the plaintiffs shall be able to point out and satisfy the master of further mistakes therein; and so far as they shall be made to appear, they are to be corrected.

I shall direct a reference to a master, with special directions, according to this decree.

Decree accordingly.